UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Contour Technology, LLC,

      Plaintiff,

v.

Valmed, SA,

      Defendant.

Civil File No. _____

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff Contour Technology, LLC, for its Complaint against Defendant Valmed, S.A., states and alleges as follows:

### INTRODUCTION

1. This is an action for breach of contract, breach of express warranties, breach of express and implied warranties of merchantability, breach of express and implied warranties of fitness for a particular purpose, and breach of the obligation of good faith and fair dealing arising from Defendant's delivery of defective goods to Plaintiff.

### THE PARTIES

2. Contour Technology ("Contour") is a limited liability company with its principal place of business in Minneapolis, Minnesota. Contour sells the Contour Core Sculpting™ System, an FDA-cleared device for tightening, toning and strengthening abdominal muscles.

SCANNED
JAN 0 3 2010
U.S. DISTRICT COURT MPLS

3. Upon information and belief, Valmed, S.A. ("Valmed") is a Swiss corporation with its principal place of business in Sion, Switzerland.

## JURISDICTION AND VENUE

4. The Court has diversity jurisdiction under 28 U.S.C. § 1332. The parties are diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue exists under 28 U.S.C. § 1391(a) and (c). Furthermore, Section 16(f) of the contract in issue provides for venue in this District.

## FACTS

6. Valmed claims that it owns certain technology for use in consumer products that stimulate muscles, nerves and organs through electrical impulse.

7. Contour owns certain product designs for use in consumer products that stimulate muscles, nerves, and organs through electrical impulse. Contour sells an abdominal belt called the Contour Core Sculpting™ System. The Contour Core Sculpting™ System may be used at varying intensities.

8. On or around November 21, 2006 Contour and Valmed entered into a Distribution and License Agreement (hereafter "Agreement"). A copy of the Agreement with amendments is attached as Exhibit A.

9. In the Agreement, Valmed granted Contour an exclusive license to its electrical stimulation technology for the purpose of integration into Contour's products for sale to customers in the United States and Canada.

10. Valmed warranted for a period of eighteen months from the date of shipment that its electrical stimulation technology ("units") are of merchantable quality and fit for Contour's particular use. Valmed also agreed to repair or replace defective units.

11. In or about 2008, Contour received a delivery of 64,000 defective units from Valmed. The units were defective in that one of the two channels that deliver electrical signals flutters at higher intensity levels. When the signal flutters, users of the Contour Core Sculpting™ System may experience the sensation of a mild electric shock.

12. Approximately 16,000 Contour Core Sculpting™ abdominal belts containing defective units from Valmed were returned by customers, resulting in a loss of good will and significant expense to Contour.

13. Contour informed Valmed that approximately 15,000 defective units had been returned no later than September 2009. The number of defective units that have been returned is now approximately 16,000.

14. Valmed acknowledges that the units are defective. Valmed acknowledged that the units are defective in an email listing the defective units by serial number.

15. Valmed provided a device to Contour to test the 16,000 returned units for the defect. Contour tested a random sample of over 100 units and every one was defective.

16. Contour sent ten samples of the defective units to Valmed. Valmed acknowledged receipt of the units on November 2, 2009. None of the units has been repaired or replaced.

17. Contour has repeatedly asked Valmed to explain how Valmed will repair or replace the defective units, but Valmed refuses to do so.

18. Among other things, Contour asked Valmed to indicate: (a) what process Valmed proposed to use for repairs; (b) whether any units had been successfully repaired; (c) whether any testing had been done on the units; (d) whether any repaired units had been tested in the field, and (e) whether Valmed had ever used the process it proposed to employ to repair the units with any other product.

19. Valmed refused to provide any of this information in a timely fashion. In short, Valmed failed to give any assurance to Contour that it was able to repair the defective units, let alone do so expeditiously.

20. Valmed finally identified a method of repair (Non Confirming Product Return) and maintained that it was the proper way to repair the units. Valmed later notified Contour that it was abandoning the method because it did not work within the facility that was to do the repairs.

### COUNT ONE
### Breach of Contract

21. Plaintiff realleges and reasserts each and every claim above as if the same were fully set forth herein.

22. Contour and Valmed entered into the Agreement.

23. Contour performed its obligations under the Agreement.

24. Valmed breached the Agreement by delivering defective units to Contour.

4

25. Contour has suffered damages as a result of Valmed's breach in an amount to be proven at trial.

## COUNT TWO
### Breach of Express Warranty

26. Plaintiff realleges and reasserts each and every claim above as if the same were fully set forth herein.

27. Before the parties entered into the Agreement, Valmed made representations to Contour that its technology, when integrated into Contour's products, would reliably deliver electrical impulses at various intensity levels.

28. These representations created express warranties.

29. The units in issue are not as warranted because the signal flickers at higher intensity levels, giving some users the sensation of a mild electric shock. Because the units do not reliably deliver electrical impulses at higher intensity levels, they do not conform to the representations made by Valmed.

30. Valmed breached its express warranty to Contour.

31. Contour has suffered damages as a result of Valmed's breach of warranty in an amount to be proven at trial.

## COUNT THREE
### Breach of Express and Implied Warranty of Merchantability

32. Plaintiff realleges and reasserts each and every claim above as if the same were fully set forth herein.

33. In Section 8(f) of the Second Amendment to the Agreement, Valmed warranted that each product delivered to Contour would be of merchantable quality.

34. The defective units do not operate within the variations permitted by the Agreement and are therefore not merchantable.

35. Valmed also made implied warranties of merchantability to Contour under the Uniform Commercial Code.

36. Valmed breached express and implied warranties of merchantability to Contour.

37. Contour has suffered damages as a result of Valmed's breach in an amount to be proven at trial.

## COUNT FOUR
### Breach of Express and Implied Warranty for a Particular Purpose

38. Plaintiff realleges and reasserts each and every claim above as if the same were fully set forth herein.

39. In Section 8(f) of the Second Amendment to the Agreement, Valmed warranted that each product delivered to Contour would be fit for use as provided in the Agreement.

40. Valmed also made implied warranties of fitness for a particular purpose to Contour under the Uniform Commercial Code.

41. Valmed knew that Contour's intended purpose for the electrical stimulation technology was for integration into the Contour Core Sculpting$^{TM}$ System for sale to customers in the United States and Canada.

42. Upon information and belief, Valmed knew that Contour relied on Valmed's skill and judgment in selecting the appropriate electrical stimulation technology for use in its products.

43. Contour actually did rely on Valmed's skill and judgment in selecting the appropriate electrical stimulation technology for use in its products.

44. Valmed breached the express and implied warranties of fitness for a particular purpose that it made to Contour.

45. Contour has suffered damages as a result of Valmed's breach in an amount to be proven at trial.

## COUNT FIVE
### Breach of the Covenant of Good Faith and Fair Dealing

46. Plaintiff realleges and reasserts each and every claim above as if the same were fully set forth herein.

47. The Agreement requires Valmed to expeditiously repair or replace defective units.

48. Valmed has asserted that it has the unilateral right to determine whether the defective units are repaired or replaced, and indicated that it intends to repair the defective units. The Agreement does not give Valmed the unilateral right to determine whether the defective units are repaired or replaced.

49. Contour repeatedly asked Valmed for assurances regarding its willingness and ability to repair the defective units in an expeditious manner. Valmed refused to provide any assurance to Contour that it is able to repair the units, let alone do so

expeditiously. By repeatedly refusing to provide any information to Contour about its plans to repair or replace the defective units, Valmed breached the implied covenant of good faith and fair dealing.

50. Contour has suffered damages as a result of Valmed's breach in an amount to be proven at trial.

## JURY DEMAND

51. Contour demands a jury trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Contour asks the Court to:

1. Enter judgment that Valmed has breached the Agreement;

2. Enter judgment in favor of Contour in an amount to be proven at trial;

3. Award attorneys fees to Contour under paragraph 16(f) of the Agreement;

4. Award Contour the costs and disbursements incurred in this action; and

5. Award Contour such other and further relief as is just and proper.

Dated: January 6, 2010

s/Lora M. Friedemann
Lora M. Friedemann (#259615)
lfriedemann@fredlaw.com
Darren B. Schwiebert (#260642)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Phone: (612) 492-7000
Fax: (612) 492-7077

**ATTORNEYS FOR PLAINTIFF
CONTOUR TECHNOLOGY, LLC**

4672111_1.DOC



January 6, 2010

**BY MESSENGER**

Clerk of Court
United States District Court
United States Courthouse, Suite 202
300 South Fourth Street
Minneapolis, MN 55415

Re: Contour Technology, LLC vs. Valmed S.A.

Dear Sir/Madam:

Enclosed for filing with your office are the following documents in regard to the above-captioned matter:

1. Summons;
2. Complaint;
3. Civil Cover Sheet;
4. Rule 7.1 Corporate Disclosure Statement; and
5. Check in the amount of $350.00.

Our messenger will wait while the Summons is being completed by your office for return to us. Thank you.

Sincerely,

*Lora Friedemann*

Lora M. Friedemann
*Attorney*
**Direct Dial:** 612.492.7185
**Email:** lfriedemann@fredlaw.com

LMF:dlo:4674226 – 60679.1
Enclosures

Attorneys & Advisors / Fredrikson & Byron, P.A.
main 612.492.7000 / 200 South Sixth Street, Suite 4000
fax 612.492.7077 / Minneapolis, Minnesota
www.fredlaw.com / 55402-1425

MEMBER OF THE WORLD SERVICES GROUP / OFFICES:
A Worldwide Network of Professional Service Providers / Minneapolis / Bismarck / Des Moines / London / Monterrey, Mexico / Shanghai